J-S43042-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| LUKE WALTERS, JR. | : | |
| | : | |
| Appellant | : | No. 234 WDA 2020 |

Appeal from the Judgment of Sentence Entered January 7, 2020
In the Court of Common Pleas of Westmoreland County
Criminal Division at No(s):  CP-65-CR-0004882-2018

BEFORE:  SHOGAN, J., STABILE, J., and KING, J.

MEMORANDUM BY KING, J.:                    **FILED JANUARY 29, 2021**

Appellant, Luke Walters, Jr., appeals *nunc pro tunc* from the judgment

of sentence entered in the Westmoreland County Court of Common Pleas,

following his jury trial conviction for robbery.[1]  We affirm.

In its opinion, the trial court sets forth the relevant facts of this case as

follows:

> The charge in this case arose from an investigation of a
> robbery at the Lower Burrell Giant Eagle in Westmoreland
> County on October 20, 2018.  During trial, nineteen-year–
> old [Victim] testified that, on the date of the incident, he
> and [his] girlfriend went to Giant Eagle.  [Victim] indicated
> that, after leaving the store, he and [his girlfriend] stopped
> at the Redbox machine, which was located outside of the
> store, and as he was paying for the movie, a ["man"] came
> from behind him, "stuck something" in his back, and told
> him not to move or he would be shot.  [Victim] confirmed
> that, after the interaction with the man, whom he later

_____

[1] 18 Pa.C.S.A. § 3701(a)(1)(ii).

identified as [Appellant], [Victim's girlfriend] ran into the Giant Eagle to get help. At this time, [Victim] was scared so he followed every move that [Appellant] told him to do. Specifically, [Appellant] directed [Victim] into the parking lot and asked [Victim] how much money he had. [Victim] gave [Appellant] the forty dollars that was inside his wallet and [Appellant] told him that was not enough money so they went back inside Giant Eagle to retrieve more money from an ATM. [Appellant] told [Victim] that, if he acted out in any way, [Appellant] would kill him. Prior to withdrawing any money, the police arrived. On cross-examination, [Victim] confirmed that he never actually saw [Appellant] with a gun.

[Victim's girlfriend] testified that, on October 20, 2018, she and [Victim] went to Giant Eagle and stopped to get a Redbox movie. While at the Redbox machine, [Appellant] approached them and threatened [Victim]. Based on what she heard the man say, she thought [Appellant] was going to shoot [Victim] and that made her very fearful for [Victim's] and her own life. [Victim's girlfriend] immediately ran into the Giant Eagle to seek help from the employees.

Office Jose Pantoja testified that, in October of 2018, he was employed part time as a patrol officer with the Allegheny Township Police Department. On October 20, 2018, while at the station, he received a call regarding an incident involving a holdup outside of the Giant Eagle in Lower Burrell, and he responded to the scene approximately five minutes later. Once inside the store, Officer Pantoja spoke to a couple of customers and was directed to a male in a red hooded sweatshirt, matching the earlier description provided, and a male in a blue leather jacket. Officer Pantoja then ordered the men to put their hands up and get on the floor. [Victim] was interviewed and indicated that [Appellant] took a twenty-dollar bill and four five-dollar bills from him. A search revealed money on [Appellant's] person; however, [Appellant] allegedly denied committing a robbery. [Appellant] was subsequently placed in custody. On cross-examination, Officer Pantoja testified that neither [Victim] nor [Victim's girlfriend] told him that they observed a gun on [Appellant's] person, and no gun was ever retrieved.

Officer Dan Myers, of the Allegheny Township Police Department, testified that, on October 20, 2018, he was dispatched through Westmoreland County 911 for an individual with a gun in the parking lot of Giant Eagle. Upon arrival, Officer Myers entered the Giant Eagle, observed Officer Pantoja with his gun out facing an individual, and proceeded to directly engage the individual. Officer Myers then placed the individual, who was later identified as [Appellant], into custody and searched him revealing a twenty-dollar bill, four five-dollar bills, and a police business card. Officer Myers confirmed that [Victim] indicated that the money taken from him was indeed a twenty-dollar bill and four five-dollar bills. On cross-examination, Officer Myers confirmed that no weapon was located on [Appellant's] person.

MaryAnne Hrivnak and Miranda Rimmel were customers at the Lower Burrell Giant Eagle on the date of the incident. At trial, Ms. Hrivnak testified that, while she was waiting at the checkout line, a girl frantically ran into the store screaming that her boyfriend was being held at gunpoint at the Redbox outside the store by a man in a red hoodie. Ms. Hrivnak indicated that a man with a hoodie and another man with a Leechburg varsity jacket entered the store with their hands in their pockets and walked towards the ATM machine. Ms. Hrivnak testified that a police officer entered the store shortly thereafter.

Ms. Rimmel testified that prior to entering the store, she observed a Harrison Township police officer and a man in a red sweatshirt speaking. Ms. Rimmel stated that, as she was walking into the store, the man was walking in front of her straight to a Redbox where a young boy and girl were standing. Ms. Rimmel indicated that the man in the sweatshirt had his hood up and he was talking to the two younger kids who appeared "a little nervous." Ms. Rimmel stated that she was familiar with the boy, and she identified him as "Brandyn." Ms. Rimmel corroborated the testimony of Ms. Hrivnak regarding the remaining events. [Appellant] elected not to testify at trial. Commonwealth's Exhibit One contains clips of video surveillance from the Giant Eagle store on the date of the incident. During trial, the Commonwealth requested the witnesses to identify themselves and the relevant parties depicted in the video.

(Trial Court Opinion, filed April 6, 2020, at 2-4) (internal citations omitted).

Following trial, a jury found Appellant guilty of robbery. On January 7, 2020, the court sentenced Appellant to five (5) to ten (10) years' imprisonment. Appellant did not file post-sentence motions or a timely notice of appeal. Appellant subsequently sought reinstatement of his direct appeal rights *nunc pro tunc*. By order dated February 14, 2020, the court reinstated Appellant's direct appeal rights *nunc pro tunc* with the Commonwealth's consent. That same day, Appellant filed a notice of appeal *nunc pro tunc*. On February 21, 2020, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and Appellant timely complied.

Appellant raises the following issue for our review:

> Whether the jury's verdict for Robbery by Threat of Immediate Serious Bodily Injury was based on sufficient evidence?

(Appellant's Brief at 2).

Appellant argues that he did not place Victim in fear of immediate serious bodily injury because no firearm was ever seen or recovered. In addition, Appellant contends he did not take any aggressive action to threaten Victim. Appellant concludes the evidence was insufficient to sustain the verdict, and this Court must vacate his conviction and judgment of sentence. We disagree.

When examining a challenge to the sufficiency of evidence, our standard

of review is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Jackson*, 215 A.3d 972, 980 (Pa.Super. 2019) (quoting

*Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa.Super. 2011), *appeal*

*denied*, 613 Pa. 642, 32 A.3d 1275 (2011)).

The Crimes Code defines the offense of robbery in pertinent part, as

follows:

**§ 3701. Robbery**

**(a) Offense defined**.—

(1) A person is guilty of robbery if, in the course of committing a theft, he:

*        *        *

(ii)    threatens    another    with    or

- 5 -

> intentionally puts him in fear of immediate
> serious bodily injury[.]

18 Pa.C.S.A. § 3701(a)(1)(ii).

A conviction under Section 3701(a)(1)(ii) is contingent upon the type of bodily harm threatened. ***Commonwealth v. Ross***, 570 A.2d 86, 87 (Pa.Super. 1990), *appeal denied*, 527 Pa. 644, 593 A.2d 417 (1990). The Commonwealth produces evidence sufficient to sustain the conviction if the evidence shows aggressive actions by the defendant that threatened the victim's safety. ***Commonwealth v. Scott***, 369 A.2d 809, 813 (Pa.Super. 1976). For purposes of Section 3701(a)(1)(ii), the proper focus is on the nature of the threat posed by an assailant and whether he reasonably placed a victim in fear of immediate serious bodily injury. ***Ross, supra***. ***See also Commonwealth v. Taylor***, 831 A.2d 661, 664 (Pa.Super. 2003) (holding Commonwealth provided sufficient evidence to convict appellant under Section 3701(a)(1)(ii), where appellant put hard object to store clerk's side, and victim testified that she was scared appellant would kill her); ***Commonwealth v. Hurd***, 407 A.2d 418, 419-21 (Pa.Super. 1979) (holding Commonwealth presented sufficient evidence to convict appellant under Section 3701(a)(1)(ii), where appellant threatened store clerk with something in his pocket that he intended for her to believe was gun).

Further, brandishing or pointing a gun at a victim is not a prerequisite for establishing guilt under Section 3701(a)(1)(ii). ***Commonwealth v. Ouch***, 199 A.3d 918, 924 (Pa.Super. 2018). ***See also Commonwealth v. Bragg***,

133 A.3d 328, 332 (Pa.Super. 2016) (holding sufficient evidence supported defendant's robbery conviction under Section 3701(a)(1)(ii), where defendant entered bank, disguised himself, and said to teller, "What are you looking at?"; rejecting defendant's argument that he could not be guilty of first-degree robbery because he did not brandish weapon or make specific verbal threat).

Instantly, Appellant appeared behind Victim, "stuck something" in Victim's back, and ordered Victim not to move or he would be shot. (*See* N.T. Trial, 10/9/19, at 27-28). Appellant's conduct scared Victim, and prompted Victim to give Appellant forty dollars. (*Id*. at 30). When Appellant told Victim that was not enough money, Appellant instructed Victim to retrieve more money from a nearby ATM. (*Id*. at 30-32). Appellant threatened to kill Victim if he failed to comply in any manner. (*Id*. at 32).

Although Victim sustained no physical injuries, the circumstances under which he was accosted were sufficient to permit an inference that Appellant intended by his conduct to put Victim in fear of imminent serious bodily injury. *See Ross, supra*. The fact that no witness saw Appellant possess a firearm, or that the police did not recover one from Appellant, is not dispositive. *See Ouch, supra*; *Bragg, supra*. Rather, Appellant demonstrated aggressive actions that threatened Victim's safety. *See Scott, supra*. Thus, the evidence was sufficient to sustain Appellant's conviction. *See Jackson, supra*; 18 Pa.C.S.A. § 3701(a)(1)(ii).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/29/2021