J-A18007-18

2018 PA Super 314

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT |
| | OF PENNSYLVANIA |
| Appellant | |
| | |
| v. | |
| | |
| SOTHORN OUCH | |
| | |
| Appellee | No. 2624 EDA 2017 |

Appeal from the Order Entered July 25, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-0003807-2017

BEFORE: STABILE, J., STEVENS, P.J.E.*, and STRASSBURGER, J.**

OPINION BY STABILE, J.:                    **FILED NOVEMBER 27, 2018**

The Commonwealth appeals from the July 25, 2017 order entered in the Court of Common Pleas of Philadelphia County ("trial court"), which affirmed the dismissal of the charge of robbery in the first degree against Appellee Sothorn Ouch and denied the Commonwealth permission to refile the charge. Upon review, we reverse and remand.

On March 12, 2017, Detective Nicholas Martella, Philadelphia Police Department, charged Appellee with robbery, graded as a first-degree felony, persons not to possess firearms, firearms not to be carried without a license, carrying firearms on public streets in Philadelphia, retail theft and recklessly

_____

* Former Justice specially assigned to the Superior Court.
** Retired Senior Judge assigned to the Superior Court.

endangering another person.[1]  Detective Martella stated in the affidavit of probable cause accompanying the complaint:

> On Sunday, March 5, 2017, 3:37 PM, 1122 Washington Avenue, P/O Butterline #1362 responded to a radio call for a robbery in progress inside the Hung Vuong Market.  Upon arrival the complaint (HN 45/A/M) and a witness, uniformed security officer (RB 62/B/M) both stated an Asian male described as 5'6 150 pounds in his 20s or 30s wearing a gray Phillies hat, gray hooded sweatshirt with white design on the front was attempting to shoplift seafood merchandise.  When he was stopped in the doorway, he attempted to pull a firearm from his waistband.  (RB) smacked his hand away and the offender fled the parking lot in a newer model white Toyota Corolla, last 4 digits on the license plate from an unknown state are 3751.
>
>    . . . .
>
> South Detective Intelligence Officer Chris Lai who stated in summary that he viewed the video of the above incident and immediately recognized the offender as [Appellee], who he's known for over 20 years and has come into contact with him in South Philadelphia numerous times.

Affidavit of Probable Cause, 3/12/17.  In summary, Detective Martella alleged that, "in the course of committing a theft, [Appellee] threatened or intentionally put another in fear of serious injury by approaching the [victim] and producing a firearm he is prohibited from carrying due to a prior disqualifying felony conviction."  Criminal Complaint, 3/12/17.

On May 2, 2017, the municipal court conducted a preliminary hearing, at which the Commonwealth offered the testimony of Richard Brooks (or RB), a security officer at a Vietnamese supermarket located at 1122 Washington Avenue, Philadelphia.  N.T. Hearing, 5/2/17, at 4-5.  Mr. Brooks testified that, on March 5, 2017, at approximately 3:30 p.m., he stopped an "[a]sian guy,"

---

[1] 18 Pa.C.S.A. §§ 3701(a)(1), 6105(a)(1), 6106(a)(1), 6108, 3929(a)(1), and 2705, respectively.

whom he described as being 5'5" tall and wearing a gray shirt, hat, sneakers and blue jeans, on suspicion of shoplifting shrimp and lobster. *Id.* at 6. Specifically, Mr. Brooks testified that he, at the direction of his manager who was standing next to him, grabbed the suspect, later identified as Appellee Sothorn Ouch, near the front doors past the registers. *Id.* at 7-8. The Commonwealth thereafter played a video of the incident for Mr. Brooks.

> Q. Now, Mr. Brooks, if you can show, when [Appellee] made this motion toward his waistband what did you do?
>
> A. Pushed back off. And then [Appellee] ran out the store. Because he reached for a gun so I said, I told the [manager], "we ain't dying for this." Pushed his hand away and he runs out the door.

*Id.* at 9.

On cross-examination, Mr. Brooks acknowledged that the manager instructed him to stop Appellee at the door. *Id.* at 12. He also acknowledged that, although he saw Appellee "reach for something," he did not know what it was. *Id.* at 13. Mr. Brooks further conceded that when Appellee reached for his waist, he did not know what Appellee was reaching for because he had taken "his eyes off of him." *Id.* at 14. Mr. Brooks explained that Appellee thereafter backed out of the store and fled. *Id.* at 14-15. Mr. Brooks further explained that Appellee never brandished a weapon nor pointed a gun in front of him. *Id.* Mr. Brooks remarked that Appellee's back was facing the front door and that the gun was "in back of him." *Id.* at 15. Following the hearing, the municipal court bound Appellee over for court on all charges except for the charge of robbery in the first degree, which the municipal court

downgraded to a third-degree felony, concluding that Appellee did not use the gun during the commission of the crime. *Id.* at 20 ("I agree with defense on this. He was trying to run . . . . It wasn't used in the commission of it. He was running, he was running.").

The Commonwealth filed a motion to refile the charge of robbery, graded as a felony in the first degree. On May 19, 2017, Appellee filed a "motion to quash return of transcript,"[2] seeking the dismissal of all charges based on a lack of evidence.

A hearing on the refile motion was held on July 25, 2017 before the Honorable Tracy Brandeis-Roman. The prosecutor explained to Judge Brandeis-Roman that the issue in the case was whether the Commonwealth's evidence presented at the preliminary hearing was sufficient to satisfy a charge of first-degree robbery. At the conclusion of the hearing, Judge Brandeis-Roman denied the Commonwealth's request to refile the charge of first-degree robbery, but permitted the Commonwealth to charge Appellee with robbery in the second degree. In so doing, the trial court reasoned that the Commonwealth did not produce any evidence that Appellee brandished or

_____

[2] In Philadelphia County, a motion for writ of habeas corpus challenging the sufficiency of the evidence presented by the Commonwealth at the preliminary hearing is generally referred to as "motion to quash the return of transcript." *Commonwealth v. Santos*, 976 A.2d 360, 361 n.3 (Pa. 2005) (noting that it is common practice in Philadelphia County to call a petition for writ of habeas corpus a motion to quash the return of transcript), *accord* *Commonwealth v. McBride*, 595 A.2d 589, 590 (Pa. 1991).

pointed the gun at anybody. The Commonwealth timely appealed to this Court.[3] Both the Commonwealth and the trial court have complied with Pa.R.A.P. 1925.

On appeal, the Commonwealth raises a single issue for our review.

> Did the evidence make out a *prima facie* case of robbery as a felony of the first degree, under 18 Pa.C.S.A. § 3701(a)(1)(ii) or 18 Pa.C.S.A. § 3701(a)(1)(iii), where [Appellee] retrieved a firearm from his waistband during his flight from a supermarket after he was stopped for being suspected of shoplifting?

The Commonwealth's Brief at 4. Essentially, the Commonwealth argues that the trial court erred in concluding that Appellee did not place Mr. Brooks, the security guard, in fear of immediate serious bodily injury.[4]

The purpose of a preliminary hearing is to determine whether the Commonwealth has made out a *prima facie* case for the offenses charged. ***Commonwealth v. Jackson***, 894 A.2d 1254, 1257 (Pa. Super. 2004) (citation omitted). "A *prima facie* case consists of evidence, read in the light

---

[3] In its notice of appeal, the Commonwealth certified that the dismissal of the first-degree robbery charge substantially handicaps its prosecution. We, therefore, have jurisdiction over this appeal. ***See*** Pa.R.A.P. 311(d).

[4] To the extent the Commonwealth justifies the charge of first-degree robbery under Section 3701(a)(iii), such argument is waived because the Commonwealth never raised it before the trial court. ***See*** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). Nonetheless, as the Commonwealth cogently points out, under Pennsylvania Rule of Criminal Procedure 564, the trial court "may allow an information to be amended, provided that the information as amended does not charge offenses arising from a different set of events and that the amended charges are not so materially different from the original charge that the defendant would be unfairly prejudiced." Pa.R.Crim.P. 564. We, however, express no opinion on the strength or merit of a Section 3701(a)(1)(iii) charge.

most favorable to the Commonwealth, that sufficiently establishes both the commission of a crime and that the accused is probably the perpetrator of that crime." ***Commonwealth v. Black***, 108 A.3d 70, 77 (Pa. Super. 2015) (citation omitted). As we have explained previously:

> The Commonwealth establishes a *prima facie* case when it produces evidences that, ***if accepted as true***, would warrant the trial judge to allow the case to go to a jury. The Commonwealth need not prove the elements of the crime beyond a reasonable doubt; rather, the *prima facie* standard requires evidence of the existence of each and every element of the crime charged. Moreover, ***the weight and credibility of the evidence are not factors at this stage***, and the Commonwealth need only demonstrate sufficient probable cause to believe the person charged has committed the offense. Inferences reasonably drawn from the evidence of record which would support a verdict of guilty are to be given effect, and the evidence must be read in the light most favorable to the Commonwealth's case.

***Commonwealth v. Marti***, 779 A.2d 1177, 1180 (Pa. Super. 2011) (internal citations and quotations omitted) (emphasis added). Moreover, "suspicion and conjecture are not evidence and are unacceptable as such." ***Commonwealth v. Packard***, 767 A.2d 1068, 1071 (Pa. Super. 2001) (citations omitted). Proof beyond a reasonable doubt is not required. ***Black***, 108 A.3d at 70; ***see McBride***, 595 A.2d at 591 (noting that the *prima facie* hurdle is less demanding than the Commonwealth's burden at trial of proving guilt beyond a reasonable doubt).

"It is settled that the evidentiary sufficiency, or lack thereof, of the Commonwealth's *prima facie* case for a charged crime is a question of law as to which an appellate court's review is plenary." ***Commonwealth v. Karetny***, 880 A.2d 505, 513-14 (Pa. 2005) (citations omitted). "[T]he trial

court is afforded no discretion in ascertaining whether, as a matter of law and in light of the facts presented to it, the Commonwealth has carried its pre-trial *prima facie* burden to make out the elements of a charged crime." ***Id.*** at 513. Therefore, we are not bound by the legal determinations of the trial court. ***Commonwealth v. Dantzler***, 135 A.3d 1109, 1112 (Pa. Super. 2016).

To sustain a conviction for first-degree robbery under Section 3701(a)(1)(ii), the Commonwealth must establish that "in the course of committing a theft," the defendant "threatens another with or intentionally puts him in fear of immediate serious bodily injury." 18 Pa.C.S.A. § 3701(a)(1)(i). "An act shall be deemed 'in the course of committing a theft' if it occurs in an attempt to commit theft or in flight after the attempt or commission." 18 Pa.C.S.A. § 3701(a)(2).

A conviction under Section 3701(a)(1)(ii) is contingent upon the type of bodily harm threatened. ***See Commonwealth v. Ross***, 570 A.2d 86, 87 (Pa. Super. 1990) (evidence sufficient to show appellant, by the use of an upraised knife, threatened the victim with serious bodily injury), ***appeal denied***, 593 A.2d 417 (Pa. 1990). The Commonwealth need not prove a verbal utterance or threat to sustain a conviction under Section 3701(a)(1)(ii). ***Commonwealth v. Hopkins***, 747 A.2d 910, 914 (Pa. Super. 2000) (citations and quotation marks omitted). It is sufficient if the evidence demonstrates aggressive actions that threatened the victim's safety. ***Id.*** For the purposes of Section 3701(a)(1)(ii), the proper focus is on the nature of the threat posed by an assailant and whether he reasonably placed a victim in fear of

"immediate serious bodily injury." *Id.* (citations omitted). Thus, a reviewing court will consider the defendant's intent and actions and not necessarily the subjective state of mind of the victim. *Commonwealth v. Rodriquez*, 673 A.2d 962, 966 (Pa. Super. 1996); *see Commonwealth v. Nelson*, 582 A.2d 1115, 1118 (Pa. Super. 1990) ("The fact that the threat may not have produced the intended fear is irrelevant."), *appeal denied*, 593 A.2d 840 (Pa. 1991); *see also Commonwealth v. Mays*, 375 A.2d 116, 117-18 (Pa. Super. 1977) (noting that it is irrelevant that the victim may not have taken the threat seriously). The threat posed by the appearance of a firearm is calculated to inflict fear of deadly injury, not merely fear of "serious bodily injury." *Hopkins*, 747 A.2d at 914. A factfinder is entitled to infer that a victim was in mortal fear when a defendant visibly brandished a firearm. *Id.*

Instantly, based upon our review of the evidence produced at the preliminary hearing, viewed in the light most favorable to the Commonwealth and accepted as true at this juncture, we conclude that the trial court erred in denying the Commonwealth's motion to refile the robbery charge as a first-degree felony. The Commonwealth offered the testimony of Mr. Brooks, the security guard, who testified that Appellee "reached for a gun" as he stopped Appellee at the front door following Appellee's alleged theft of shrimp and lobster. Mr. Brooks testified that he pushed Appellee's hand away and let him back out of the store, uttering to his manager that "we ain't dying for this." Instead of relying on the foregoing to satisfy the element of "fear of immediate serious bodily injury" under Section 3701(a)(1)(ii), the trial court

impermissibly engaged in weighing evidence and resolving conflicts in testimony. Specifically, the trial court weighed Mr. Brooks' testimony and the surveillance video and found that Mr. Brooks could not have seen or believed that Appellee possessed a gun, given Mr. Brooks' vantage point as depicted on the video recording. The resolution of such conflict is best left to the discretion of the factfinder. As noted earlier, the weight and credibility of the evidence are not factors at this stage. *See Marti*, *supra*. Accordingly, we conclude that the Commonwealth offered sufficient evidence at the preliminary hearing from which a finder of fact may conclude that Appellee engaged in first-degree robbery, by putting Mr. Brooks in fear of immediate serious bodily injury when Appellee reached for his waist during his tussle with Mr. Brooks.

Insofar as the trial court suggests that the brandishing or pointing of a gun is a prerequisite for establishing guilt under Section 3701(a)(1)(ii), we reject such suggestion. In *Commonwealth v. Bragg*, 133 A.3d 328, 332 (Pa. Super. 2016), this Court affirmed the trial court's ruling that sufficient evidence supported the defendant's robbery conviction under Section 3701(a)(1)(ii), where the defendant entered the bank, disguising himself with sunglasses and baseball cap and wearing surgical gloves to conceal his fingerprints, and said to the teller "What are you looking at?" In so doing, we rejected the defendant's argument that he could not be guilty of first-degree robbery because he did not brandish a weapon or make a specific verbal threat. *Id.* We explained that this Court has never held that brandishing a

weapon or making specific verbal threats are required to sustain a conviction under Section 3701(a)(1)(ii). *Id.* Similarly, in **Commonwealth v. Davis**, 459 A.2d 1267, 1272 (Pa. Super. 1983), a defendant entered a pipe shop through the store window, told the clerk to get back, and removed money from the cash register. Viewing the defendant's mode of entry and his warning to the clerk as aggressive and thus implying a threat to the victim's safety, this Court upheld the defendant's robbery conviction under Section 3701(a)(1)(ii). Accordingly, it is of no moment that Appellee never brandished or pointed his gun at Mr. Brooks.

In sum, based on the foregoing reasons, we conclude that the Commonwealth presented sufficient evidence at the preliminary hearing to establish robbery in the first degree under Section 3701(a)(1)(ii). Accordingly, we reverse the trial court's July 25, 2017 order and remand this case to the trial court for further proceedings consistent with this Opinion.

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/27/18

- 10 -